**[ORAL ARGUMENT NOT SCHEDULED]**

**Appeal No. 23-1216**

# In the United States Court of Appeals for the District of Columbia Circuit

GARRET O'BOYLE,

*Petitioner,*

*v.*

UNITED STATES DEPARTMENT OF JUSTICE,

*Respondent.*

**On Appeal from the Merit Systems Protection Board
No. DC-0752-23-0132-I-1**

**BRIEF OF RESPONDENT UNITED STATES DEPARTMENT OF JUSTICE**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

ELIZABETH M. HOSFORD
Assistant Director

GALINA I. FOMENKOVA
Trial Attorney
United States Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480 | Ben Franklin Station
Washington, DC 20044
(202) 514-5495

*Attorneys for the Respondent*

OF COUNSEL:

CHAD TANG
Assistant General Counsel
Federal Bureau of Investigation

<u>CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES</u>

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

A. <u>Parties and Amici</u>. The parties who have appeared before the Merit Systems Protection Board or who are parties in this Court are: petitioner, Garret O'Boyle, and respondent, the United States Department of Justice. An amicus brief has been filed by Matthew Mainen.

B. <u>Rulings Under Review</u>. The ruling under review is the decision of the Merit Systems Protection Board affirming Mr. O'Boyle's indefinite employment suspension, which became final on June 30, 2023.[1] No official citation exists for the decision.

C. <u>Related Cases</u>. There are no related cases.

/s/ Galina I. Fomenkova
GALINA I. FOMENKOVA
*Attorney for the Respondent*

---

[1] Mr. O'Boyle misidentifies the nature of the decision under review. The MSPB did not "affirm[] the suspension of his *security clearance*," Br. i (emphasis added); the board, in fact, correctly held that it could not review the merits of that suspension at all.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

GLOSSARY ............................................................................................................1

STATEMENT OF JURISDICTION ...........................................................................1

STATEMENT OF THE ISSUES ..............................................................................2

STATUTES AND REGULATIONS ..........................................................................3

STATEMENT OF THE CASE .................................................................................4

     I.     Legal Background .....................................................................................4

          A.     Whistleblower Protections Under The CSRA ...........................4

          B.     Security Clearance Determinations .........................................13

     II.     Mr. O'Boyle's Suspension And MSPB Appeal ...............................16

SUMMARY OF THE ARGUMENT .........................................................................22

STANDARD OF REVIEW .....................................................................................25

ARGUMENT ..........................................................................................................25

     I.     The Court Lacks Jurisdiction Over Mr. O'Boyle's Petition ...............25

     II.     Mr. O'Boyle Cannot Raise A Whistleblower Retaliation
          Defense To The Suspension Of His Security Clearance ....................35

          A.     Mr. O'Boyle Failed To Preserve His Arguments
               Regarding A Whistleblower Retaliation Defense ....................36

          B.     As An FBI Agent Suspended Because Of The
               Suspension Of His Security Clearance, Mr. O'Boyle Is
               Twice Precluded From Raising A Whistleblower
               Retaliation Defense In This Case .............................................41

               1.     Congress Channeled Enforcement Of
                     Mr. O'Boyle's Whistleblower Protections
                     Through Internal Review ...............................................41

               2.     The Merits Of Mr. O'Boyle's Security
                     Clearance Suspension Are Nonjusticiable
                     Under *Egan* ...............................................................46

CONCLUSION .......................................................................................................52

FEDERAL CASES

*Baker v. Carr*,
369 U.S. 186 (1962).................................................................... 47

*Bosley v. MSPB*,
162 F.3d 665 (Fed. Cir. 1998) ................................................... 37

*Brown v. GSA*,
425 U.S. 820 (1976).................................................................... 48

*Cannon v. Univ. of Chi.*,
441 U.S. 677 (1979).................................................................... 45

*Cole v. Young*,
351 U.S. 536 (1956).................................................................... 15

*Davis v. Billington*,
681 F.3d 377 (D.C. Cir. 2012)............................................... 26, 27

*Dep't of Homeland Sec. v. MacLean*,
574 U.S. 383 (2015).................................................................... 26

*\*Dep't of the Navy v. Egan*,
484 U.S. 518 (1988)........................... 1, 13, 14, 15, 24, 46, 47, 49, 51

*El-Ganayni v. United States DOE*,
591 F.3d 176 (3d Cir. 2010) ................................................... 49, 50

*Elgin v. Dep't of the Treasury*,
567 U.S. 1 (2012)........................................................................ 37

*Food Mktg. Inst. v. Argus Leader Media*,
139 S. Ct. 2356 (2019)................................................................ 32

*Gonzalez v. Thaler*,
565 U.S. 134 (2012).................................................................... 42

*Henson v. Santander Consumer USA Inc.*,
582 U.S. 79 (2017)...................................................................... 32

Authorities upon which we chiefly rely are marked with asterisks.

*Hesse v. Dep't of State,
217 F.3d 1372 (Fed. Cir. 2000) ................................ 1, 15, 23, 45, 47

Hopkins v. Saunders,
199 F.3d 968 (8th Cir. 1999) ...................................................... 40

Hughes Aircraft Co. v. United States ex rel. Schumer,
520 U.S. 939 (1997) ............................................................ 44, 45

Lindahl v. Office of Pers. Mgmt.,
470 U.S. 768 (1985) ................................................................ 4, 5

Loughrin v. United States,
573 U.S. 351 (2014) .............................................................. 28, 29

Marymount Hosp. v. Shalala,
19 F.3d 658 (D.C. Cir. 1994) ...................................................... 37

Mead v. Merit Sys. Prot. Bd.,
687 F.2d 285 (9th Cir. 1982) ...................................................... 27

Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,
429 U.S. 274 (1977) ............................................................... 9, 48

*Parkinson v. DOJ,
874 F.3d 710 (Fed. Cir. 2017) ................ 1, 8, 23, 26, 34, 43

Phillips v. Seiter,
173 F.3d 609 (7th Cir. 1999) ...................................................... 35

Rudisill v. McDonough,
144 S. Ct. 945 (2024) ................................................................ 46

Wagner v. FEC,
717 F.3d 1007 (D.C. Cir. 2013) ................................................... 29

Weber v. United States,
209 F.3d 756 (D.C. Cir. 2000) ......................................... 15, 23, 47

Webster v. Doe,
486 U.S. 592 (1988) .................................................................. 47

Whitmore v. Dep't of Labor,
680 F.3d 1353 (Fed. Cir. 2012) ................................................... 39

*Woodhull Freedom Found. v. United States*,
72 F.4th 1286 (D.C. Cir. 2023) ............................................................... 25

*United States v. Dorcely*,
454 F.3d 366 (D.C. Cir. 2006) ................................................................. 29

*United States v. Fausto*,
484 U.S. 439 (1988) ............................................................................... 4, 5

*United States v. L. A. Tucker Truck Lines, Inc.*,
344 U.S. 33 (1952) ....................................................................... 24, 25, 40

*United States v. Olano*,
507 U.S. 725 (1993) .................................................................................. 38

*Zummer v. Sallet*,
37 F.4th 996 (5th Cir. 2022) ..................................................................... 29

## STATUTES

5 U.S.C. § 1201 ............................................................................................ 21

5 U.S.C. § 1204 ............................................................................................ 21

5 U.S.C. § 1221 ...................................................................... 8, 9, 10, 28, 48

*5 U.S.C. § 2302 ............................... 1, 2, 5, 6, 7, 15, 22, 23, 26, 30, 31, 48

*5 U.S.C. § 2303 ...................... 3, 4, 5, 6, 7, 10, 12, 15, 30, 31, 45, 46, 48

5 U.S.C. § 2303 (2012) .............................................................................. 30

5 U.S.C. § 4303 ............................................................................................ 7

5 U.S.C. § 7511 .......................................................................................... 1, 7

5 U.S.C. § 7512 ...................................................................................... 1, 7, 15

5 U.S.C. § 7513 .......................................................................................... 1, 7

5 U.S.C. § 7701 ....................................................... 1, 8, 21, 23, 28, 39, 43

*5 U.S.C. § 7703 ............................................... 2, 21, 22, 23, 25, 34, 35

28 U.S.C. § 1631 ........................................................................................ 35

28 U.S.C. § 1295 ........................................................................ 22, 25

50 U.S.C. § 3341 ........................................................................ 15, 51

Pub. L. 95-454, 92 Stat. 1111 (Oct. 13, 1978)................................ 5, 6, 7, 8

Pub. L. 101-12, 103 Stat. 16 (Apr. 10, 1989) ...................................... 8, 10

Pub. L. 112-199, 126 Stat. 1465 (Nov. 27, 2012 )............................... 11, 33

Pub. L. 114-302, 130 Stat. 1516 (Dec. 16, 2016) .................................. 7, 31

Pub. L. 117-263, 136 Stat. 2395 (Dec. 23, 2022) ................... 11, 12, 31, 34

## REGULATIONS

5 C.F.R. § 1201.56 .......................................................................... 39

5 C.F.R. § 1201.111 ........................................................................ 21

5 C.F.R. § 1201.113 ........................................................................ 21

5 C.F.R. § 1201.114 ........................................................................ 21

28 C.F.R. Part 27............................................................................ 10

64 Fed. Reg. 58782 (Nov. 1, 1999)................................................. 10, 11

Executive Order 12968,
    60 Fed. Reg. 40245 (Aug. 7, 1995) ........................................... 14, 51

## OTHER AUTHORITIES

135 Cong Rec S 2779 (Mar. 16, 1989), available at
    https://congressional.proquest.com/congressional/docview/
    t17.d18.c495bae80f0010c0? ..................................................... 10, 48

H.R. Rept. 112-508 ......................................................................... 33

S. Rep. 112-155............................................................................. 33

Presidential Policy Directive/PPD-19, available at
    https://www.usda.gov/sites/default/files/documents/ppd.pdf.................... 16, 51

Security Executive Agent Directive 4, "National Security Adjudicative
    Guidelines," available at https://www.dni.gov/files/NCSC/
    documents/Regulations/SEAD-4-Adjudicative-Guidelines-U.pdf ............. 17, 50

Security Executive Agent Directive 9, "Whistleblower Protection:
    Appellate Review Of Retaliation Regarding Security Clearances
    And Access Determinations," available at https://www.dni.gov/files/
    NCSC/documents/Regulations/06-02-22_ODNI_Document_SEAD-
    9_22-00284_U_SIGNED-FINAL.pdf .................................................... 15, 16, 51

*Tumblin v. DOJ*,
    2023 MSPB Lexis 3913 (M.S.P.B. July 28, 2023)............................................ 45

## GLOSSARY

| | |
|---|---|
| CSRA | Civil Service Reform Act |
| FBI | Federal Bureau of Investigation |
| MSPB or board | Merit Systems Protection Board |

## STATEMENT OF JURISDICTION

The Merit Systems Protection Board (MSPB or board) had jurisdiction to review Mr. O'Boyle's indefinite employment suspension under 5 U.S.C. § 7701; *see* 5 U.S.C. § 7513(d). Mr. O'Boyle was suspended for more than fourteen days; and although Mr. O'Boyle is an FBI Special Agent, he is also a preference eligible veteran. 5 U.S.C. §§ 7511(b)(8); 7512(2).

However, as discussed more fully below, the MSPB lacks jurisdiction to review the merits of the suspension of Mr. O'Boyle's security clearance that precipitated his employment suspension, including on the basis of alleged whistleblower retaliation. § 7701(c)(2)(B) (allowing a whistleblower retaliation defense only as "described in section 2302(b)"); 5 U.S.C. § 2302(a)(2)(C)(ii)(I) (excluding the FBI from section 2302); *Parkinson v. DOJ*, 874 F.3d 710, 713-14 (Fed. Cir. 2017) (en banc); *Department of the Navy v. Egan*, 484 U.S. 518, 527-31 (1988); *Hesse v. Dep't of State*, 217 F.3d 1372, 1375-80 (Fed. Cir. 2000).

The decision of the MSPB affirming Mr. O'Boyle's employment suspension became final on June 30, 2023, when he did not file a petition for full board review

of his initial decision. *See* JA388. He timely filed a petition for review in this Court on August 11, 2023, *i.e.*, within 60 days of the issuance of the final board decision. *See* 5 U.S.C. § 7703(b)(1).

However, as discussed more fully below, this Court does not possess jurisdiction over his petition, because it does not raise a "challenge to the [b]oard's disposition of allegations of a prohibited personnel practice … described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)." § 7703(b)(1)(B). The FBI is expressly and categorically excluded from those subsections. § 2302(a)(2)(C)(ii)(I).

## STATEMENT OF THE ISSUES

1.  Whether the Court lacks jurisdiction over this appeal because Mr. O'Boyle cannot "challenge [] the [b]oard's disposition of allegations of a prohibited personnel practice … described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)" as required in § 7703(b)(1)(B) because the FBI is excluded from those subsections.

2.  Whether Mr. O'Boyle abandoned or otherwise failed to preserve his whistleblower retaliation defense at the MSPB.

3.  If Court finds neither of the preceding issues to be dispositive, whether Mr. O'Boyle can challenge the suspension of his security clearance based on a claim of whistleblower retaliation.

Except as provided below, the pertinent statutes are contained in the statutory addendum to the brief for Mr. O'Boyle.  However, Mr. O'Boyle includes the version of 5 U.S.C. § 2303 currently in effect; the operative version of that statute in effect at the time of Mr. O'Boyle's suspension did not contain subsection (d) and was as follows:

### § 2303.  Prohibited personnel practices in the Federal Bureau of Investigation

(a) Any employee of the Federal Bureau of Investigation who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority, take or fail to take a personnel action with respect to an employee in, or applicant for, a position in the Bureau as a reprisal for a disclosure of information—

(1) made—

(A) in the case of an employee, to a supervisor in the direct chain of command of the employee, up to and including the head of the employing agency;

(B) to the Inspector General;

(C) to the Office of Professional Responsibility of the Department of Justice;

(D) to the Office of Professional Responsibility of the Federal Bureau of Investigation;

(E) to the Inspection Division of the Federal Bureau of Investigation;

(F) as described in section 7211;

(G) to the Office of Special Counsel; or

3

(H) to an employee designated by any officer, employee, office, or division described in subparagraphs (A) through (G) for the purpose of receiving such disclosures; and

(2) which the employee or applicant reasonably believes evidences—

(A) any violation of any law, rule, or regulation; or

(B) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.

For the purpose of this subsection, "personnel action" means any action described in clauses (i) through (x) of section 2302(a)(2)(A) of this title with respect to an employee in, or applicant for, a position in the Bureau (other than a position of a confidential, policy-determining, policymaking, or policy-advocating character).

(b) The Attorney General shall prescribe regulations to ensure that such a personnel action shall not be taken against an employee of the Bureau as a reprisal for any disclosure of information described in subsection (a) of this section.

(c) The President shall provide for the enforcement of this section in a manner consistent with applicable provisions of sections 1214 and 1221 of this title.

## STATEMENT OF THE CASE

I. Legal Background

A. Whistleblower Protections Under The CSRA

In the Civil Service Reform Act of 1978 (CSRA) Congress "established a comprehensive system for reviewing personnel action taken against federal employees." *United States v. Fausto*, 484 U.S. 439, 455 (1988). The CSRA "overhauled" the existing "patchwork" of statutes and rules governing the civil

4

service system and replaced it with "an integrated scheme" "designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 773 (1985); *Fausto*, 484 U.S. at 445. As part of that overhaul, the CSRA created, *inter alia*, the MSPB and "prescribe[d] in great detail the protections and remedies applicable to [personnel] action, including the availability of administrative and judicial review." *Fausto*, 484 U.S. at 443.

As most relevant here, the CSRA provided protection for certain whistleblower retaliation claims, expressly defining the scope and limits of that protection. From the outset, Congress differentiated between Executive agencies generally, and those with responsibility in the intelligence sphere, with Congress maintaining that differentiation throughout its subsequent amendments to the universe of whistleblower retaliation protection, continuing to this day. *See* Pub. L. 95-454, Title I, § 101, 92 Stat. 1115, 1117; §§ 2302(a)(2)(C), 2303.

Section 23<u>02</u> is the broader section; it defines "prohibited personnel practices" generally, with subsections 2302(b)(8) and 2302(b)(9)(A)(i), (B), (C), and (D) specifically addressing whistleblower retaliation. These subsections prohibit the "tak[ing] or fail[ing] to take, or threaten[ing] to take or fail to take," a "*personnel action*" against any "employee or applicant for employment because of" enumerated protected disclosures (or the exercise of associated appeal rights).

§ 2302(b)(8) & (b)(9) (emphasis added).  A "personnel action," in turn, is defined as a list of enumerated actions, *e.g.*, appointment, promotion, removal, etc., taken "with respect to an employee in, or applicant for, a covered position in an *agency*." § 2302(a)(2)(A) (emphasis added).  And an "agency" is defined as "an Executive agency and the Government Publishing office, but does not include … [*inter alia*] the Federal Bureau of Investigation."  § 2302(a)(2)(C)(ii)(I).  Thus, sections 2302(b)(8) and 2302(b)(9)(A)(i), (B), (C), and (D) prohibit whistleblower retaliation for certain disclosures with respect to Federal employees outside the FBI.

Whistleblower retaliation protections for FBI employees specifically are addressed in section 2303, entitled "[p]rohibited personnel practices in the Federal Bureau of Investigation."  Section 2303 parallels section 2302 in certain respects.  It prohibits "tak[ing] or fail[ing] to take a personnel action" with respect to an employee or applicant of the "Bureau as a reprisal for" a protected disclosure. § 2303(a).  It also borrows a subset of the enumerated list of things that constitute a "personnel action" from section 2302(a)(2)(A)—*i.e.* the appointment, promotion, removal, etc.—specifying here that they would be taken "with respect to an employee in, or applicant for, a position in the Bureau" instead of "an agency."  *Id*.

However, unlike section 2302, section 2303 limits to whom a protected disclosure can be made.  When initially enacted, a protected disclosure by an employee of the FBI could only be made "to the Attorney General (or an employee

6

designated by the Attorney General for such purpose)."  Pub. L. 95-454, Title I,

§ 101, 92 Stat. 1117; *compare with* 92 Stat. 1116; § 2302(b)(8)(A) (imposing

limitations on the substance of the disclosure, but not the audience).  In 2016,

Congress expanded the list of people and institutions to whom FBI employees may

make protected disclosures, *see* Pub. L. 114-302, § 2, 130 Stat. 1516, but it remains

a finite and closed universe.  § 2303(a)(1)(A)-(H).

Sections 2302 and 2303 also differ in the manner in which Congress directed

that they be enforced.  Upon enactment, the CSRA provided for only one path to

the MSPB—direct appeals of particular serious adverse actions under section 7701.

*See* Pub. L. 95-454, Title II, § 204, 92 Stat. 1136-37.  These direct appeals can be

brought only by certain employees to challenge (with some enumerated

exceptions) only a significant adverse action—a removal, suspension for longer

than 14 days, reduction in pay or grade, or a furlough of 30 days or less.  §§ 7512;

7513(d).[2]  FBI employees, including Special Agents, generally were excluded from

the definition of covered employees, and so could not challenge an adverse action

at the MSPB at all, unless they were preference eligible veterans.  § 7511(b)(8).

---

[2]  In addition to the adverse actions authorized in Chapter 75, which can be
based on either a conduct or a performance based "cause" so long as the agency
can demonstrate that it will "promote the efficiency of the service," § 7513(a),
Congress also gave agencies authority to remove or reduce in grade employees for
unacceptable performance under 5 U.S.C. § 4303.  Chapter 43 is not at issue in this
case, but MSPB review of those removals or reductions in grade are also governed
by section 7701.  *See* § 4303(e).

Section 7701 also provides for certain affirmative defenses that can be raised by the employee in a direct appeal.  First, an agency's decision may not be sustained if the employee "shows" a "harmful error in the application of the agency's procedures."  Second, the agency's decision may not be sustained if the employee "shows that the decision was based on any prohibited personnel practice described in section 2302(b)."  Third, as a general catchall, the decision may not be sustained if the employee "shows that the decision was not in accordance with law."  § 7701(c)(2); *see* Pub. L. 95-454, Title II, § 205, 92 Stat. 1138.  Thus, the employee bears the burden of proof on the affirmative defenses.  And when it comes to whistleblower protections specifically, section 7701 expressly allows for an affirmative defense only with respect to those protections provided for in section 2302, not section 2303.  *See Parkinson*, 874 F.3d at 713-15.

In 1989, Congress passed the Whistleblower Protection Act.  *See* Pub. L. 101-12, 103 Stat. 16 *et seq*.  The Act created a new path to MSPB review for some whistleblower retaliation claims—those outside the intelligence community—a so-called individual right of action.  Under 5 U.S.C. § 1221, upon exhausting their claims with the Office of Special Counsel, petitioners can seek corrective action with the MSPB "with respect to any personnel action taken, or proposed to be taken … as a result of a prohibited personnel practice described in

section 2302(b)(8) or section 2302(b)(9)(A)(i), (B), (C), or (D)."[3] § 1221(a).

The Whistleblower Protection Act further established a defense for the agency in the event that the employee can establish a *prima facie* case of whistleblower retaliation, by codifying a modified version of the test articulated by the Supreme Court in the context of pre-CSRA First Amendment retaliation claims. In *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, the Supreme Court established a burden shifting framework where the employee had the initial burden to show "that his conduct was constitutionally protected, and that this conduct was a 'substantial factor'" in the challenged action, but if he met that burden, the agency could still prevail if it "show[s] by a preponderance of the evidence that it would have reached the same decision … even in the absence of the protected conduct." 429 U.S. 274, 287 (1977).

Congress expressly set out to codify this test, with two changes: section 1221 specifies that "in any case involving an alleged prohibited personnel practice as described under section 2302(b)(8) or section 2302(b)(9)(A)(i), (B), (C), or (D)," the employee must "demonstrate[] that a disclosure or protected activity described under section 2302(b)(8) or section 2302(b)(9)(A)(i), (B), (C), or (D) was a *contributing* factor in the personnel action" and then the agency must

---

[3] Initially, only the protections in section 2302(b)(8) could be enforced through an individual right of action, but Congress expanded section 1221 to include the protections in section 2302(b)(9)(A)(i), (B), (C), or (D) in 2012.

"demonstrate[] by *clear and convincing* evidence that it would have taken the same personnel action in the absence of such disclosure."  § 1221(e) (emphasis added); *see* 135 Cong. Rec. S2779 (Joint Explanatory Statement, 7. burden of proof).

With respect to the FBI, however, the Whistleblower Protection Act maintained the separation established in the CSRA.  Congress neither amended section 2302 to eliminate the express exclusion of the FBI from its definition of "agency," nor did it authorize an individual right of action to the MSPB to enforce the protections of section 2303.  Rather, Congress made a conforming change to section 2303, to require that FBI employees be provided with enforcement mechanisms "*in a manner consistent with* applicable provisions of sections 1214 [Office of Special Counsel review] and 1221 [MSPB review]."  § 2303(c) (emphasis added); *see* Pub. L. 101-12, § 9, 103 Stat. 34.

Consistent with that directive, the Attorney General promulgated regulations under which FBI employees can bring claims of whistleblower reprisal to the Department of Justice's Office of Professional Responsibility and the Office of Inspector General, which function analogous to the Office of Special Counsel for other federal employees.  The findings and conclusions of those offices are then reported to the Director, Office of Attorney Recruitment and Management, who—analogous to the MSPB—can order corrective action.  *See* 28 C.F.R. Part 27; 64 Fed. Reg. 58782, 58783 (Nov. 1, 1999).  Until December 2022, when Congress

10

amended section 2303 as discussed below, there was no right of review of the Director's decision either at the MSPB or in a court. *See* 64 Fed. Reg. 58785-86.

In 2012, Congress enacted the Whistleblower Protection Enhancement Act. Pub. L. 112-199, 126 Stat. 1465 *et seq.* As most relevant here, the act did two things: (1) it granted jurisdiction for regional circuit review for petitions challenging the MSPB's "disposition of allegations of [] prohibited personnel … practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," and (2) it reenacted section 2302(a)(2)(C), specifying the agencies that are excluded from the definition of "agency" in section 2302, to include the FBI. Pub. L. 112-199, §§ 105, 108, 126 Stat. 1468, 1469. Congress also expanded the individual right of action under section 1221 to cover prohibited personnel practices in section 2302(b)(9)(A)(i), (B), (C), or (D), *id.* at § 101, 126 Stat. 1465, but the Act made no changes to:

- Section 7701(c)(2)(B), limiting the affirmative defense in a direct appeal to prohibited personnel practices described in section 2302(b);

- The limitation on the right to seek corrective action at the MSPB in section 1221(a) beyond prohibited personnel practices "described in section 2302(b)(8) or section 2302(b)(9)(A)(i), (B), (C), or (D);" or

- Section 2303.

*See generally* Pub. L. 112-199, 126 Stat. 1465-76.

Finally, on December 23, 2022—*after* Mr. O'Boyle was suspended and filed his direct appeal to the MSPB in this case—as part of the National Defense

Authorization Act for Fiscal Year 2023, Congress expanded the enforcement of whistleblower protections for FBI employees to include an individual right of action at the MSPB "pursuant to section 1221." Pub. L. 117-263, Div. E, Title LIII, § 5304(a), 136 Stat. 3250-51; § 2303(d). As with the individual right of action for employees of other agencies, Congress imposed an exhaustion requirement. However, instead of exhausting though the Office of Special Counsel prior to seeking corrective action at the MSPB—as is the case for agencies covered by section 2302—FBI employees must first pursue their reprisal claim within the Department of Justice "under regulations promulgated under" section 2303. *Id*.

Congress effectuated these expanded review rights by amending section 2303 directly; and in doing so, Congress made no changes to the affirmative defenses permitted under section 7701 in direct appeals, or to the exclusion of the FBI in section 2302(a)(2)(C).

In sum, when it comes to the scope and enforcement of their whistleblower retaliation protections at the MSPB:

| Agencies Covered By § 2302 | FBI |
|---|---|
| ▪ Appeal rights under § 7701; affirmative defense for whistleblower retaliation protections in § 2302(b) | ▪ No appeal rights under § 7701 unless preference eligible veteran; no affirmative defense for whistleblower retaliation protections in § 2303 |
| ▪ Individual right of action under § 1221, to enforce whistleblower retaliation protections in § 2302(b), subject to first filing claim with the Office of Special Counsel | ▪ *Before December 23, 2022*: No MSPB review of whistleblower retaliation protections<br><br>▪ *After December 23, 2022*: Individual right of action under § 1221, to enforce whistleblower retaliation protections in § 2303, subject to first filing claim with the Department of Justice |

B.    <u>Security Clearance Determinations</u>

Some positions in the Federal government require a security clearance as a necessary condition of employment. The Supreme Court has long recognized a "constitutional investment of power in the President"—"as head of the Executive Branch and as Commander in Chief"—"to classify and control access to information bearing on national security and to determine whether an individual is sufficiently trustworthy to occupy a position in the Executive Branch that will give that person access to such information." *Egan*, 484 U.S. at 527; *id.* (collecting cases where the Court "has recognized the Government's 'compelling interest' in

withholding national security information from unauthorized persons in the course of executive business").

The purpose of a security clearance is to "attempt to predict [an individual's] possible future behavior and to assess whether, under compulsion of circumstances or for other reasons, he might compromise sensitive information." *Id*. at 528. This "[p]redictive judgment," the courts have recognized, is "an inexact science at best," and one that "should err, if [it] must, on the side of denials." *Id*. at 529, 531 (citation omitted). "Eligibility shall be granted only where facts and circumstances indicate access to classified information is clearly consistent with the national security interests of the United States, and any doubt shall be resolved in favor of the national security." Exec. Order No. 12968, § 3.1(b), 60 Fed. Reg. 40245, 40250 (Aug. 7, 1995).

Accordingly, there is no MPSB (or judicial) review of the merits of a security clearance determination. The Supreme Court has held that "the grant of security clearance to a particular employee, a sensitive and inherently discretionary judgment call, is committed by law to the appropriate agency of the Executive Branch." *Egan*, 484 U.S. at 527. And—consistent with that constitutional commitment—the suspension (or revocation) of a security clearance is neither an adverse employment action subject to appeal under section 7701, nor is it a "personnel action" to which the prohibited personnel practices in either section

2302 or 2303 apply.  *See* §§ 7212, 2302(a)(2)(A)(i)-(xii); *Weber v. United States*, 209 F.3d 756, 759-60 (D.C. Cir. 2000) (suspension of security clearance not a "personnel action" under section 2302(a)(2)); *Hesse*, 217 F.3d at 1377-80 (same); § 2303(a) (adopting definition of personnel action in § 2303(a)(2)(A)(i)-(x)).

That is not to say that employees faced with adverse security clearance determinations have no protections.  For example, section 3341 of title 50 prohibits "tak[ing] or fail[ing] to take, or threaten[ing] to take or fail to take, any action with respect to any employee's security clearance or access determination in retaliation for" certain enumerated protected disclosures.  50 U.S.C. § 3341(j)(1).  But the *enforcement* of those protections is confined to the agencies tasked—and entrusted—with the responsibility for protecting the classified information, rather than with external bodies like the MSPB or the courts.  § 3341(j)(4)-(8); *see Egan*, 484 U.S. at 529 ("[T]here is a reasonable basis for the view that an agency head who must bear the responsibility for the protection of classified information committed to his custody should have the final say in deciding whether to repose his trust in an employee who has access to such information.") (quoting *Cole v. Young*, 351 U.S. 536, 546 (1956)).

The Director of National Intelligence, who is, by delegation from the President, responsible for implementing the provisions of section 3341, has issued further guidance on "Whistleblower Protection: Appellate Review Of Retaliation

Regarding Security Clearances And Access Determinations." Security Executive Agent Directive 9. And in Presidential Policy Directive 19, addressing "protecting whistleblowers with access to classified information," President Obama ordered that "the head of each agency in possession of classified information shall certify … that the agency has a review process that permits employees to appeal actions affecting Eligibility for Access to Classified Information they allege to be in violation of this directive." Presidential Policy Directive/PPD-19, at 1-2 (capitalization omitted). The directive also established a right of further review by the offices of the Inspector General. *Id*. at 3-4.

II.     Mr. O'Boyle's Suspension And MSPB Appeal

Petitioner, Garrett O'Boyle, is a Special Agent with the FBI's Critical Incident Response Group. JA369. An essential condition of employment in that position—as with all FBI positions—is that Mr. O'Boyle maintain a Top Secret security clearance. *Id*. In September 2022, Mr. O'Boyle was interviewed by two FBI Special Agents. During that interview, Mr. O'Boyle was asked and admitted that he accessed information about a particular case to which he was not assigned and that was being handled by a different FBI field office. JA291-293. Mr. O'Boyle was also asked about, but denied, allegations that he leaked information about that case to the media, JA296-297, and was interviewed about other allegations. JA298-299; JA66; *see* JA321-323; JA378-379.

At that time, Mr. O'Boyle was also notified that the Security Division suspended his security clearance, pending the outcome of its investigation into allegations that Mr. O'Boyle "misused FBI information technology systems and records." JA150; *see* Security Executive Agent Directive 4, National Security Adjudicative Guidelines, at 21 (Guideline K), 23 (Guideline M). The Security Division determined that the allegations "raise[d] sufficient concern about [Mr. O'Boyle's] judgment, trustworthiness, and reliability to safeguard classified and sensitive information, and therefore, warrant[ed] suspension of [his] clearance pending further investigation." JA150.

Mr. O'Boyle was further notified "in writing that the agency was proposing to indefinitely suspend him from his position based on his failure to meet an essential condition of employment," *i.e.*, the suspension of his security clearance. JA370; JA146-147. And Mr. O'Boyle was informed that he had a right to review the materials that were the basis for the proposed suspension, be represented by counsel, and respond orally, in writing, or both, to the proposal. *Id*. After receiving two extensions, Mr. O'Boyle, through counsel, ultimately submitted two written responses and a telephonic reply on October 14 & 24, 2022. JA370 & n.3.

On November 3, 2022, Mr. O'Boyle's proposed suspension was sustained, pending the final resolution of his security clearance adjudication. JA371; JA18-20. Although the suspension was effective upon receipt of the letter notifying

17

Mr. O'Boyle of the decision, he was further offered a one-time opportunity to voluntarily use his accrued leave to toll the effective date. *Id.* Mr. O'Boyle elected to do so, and, as such, his indefinite suspension began on January 1, 2023. JA371-372.

On December 4, 2022, Mr. O'Boyle filed a direct appeal with the MSPB challenging his indefinite employment suspension. JA372; JA4-9. In his initial appeal, he alleged that "[t]he appellant has stated and informed the FBI that a reasonable belief exists that the adverse personnel action against the appellant is reprisal for whistleblower activity." JA9.

In its first substantive filing, the FBI observed that Mr. O'Boyle "provided no information about what his alleged whistleblower disclosures were and how the decision-makers regarding the indefinite suspension were aware of such disclosures." SJA7. In any event, the FBI also argued that "FBI employees are not able to bring whistleblower claims to the MPSB" because they are explicitly excluded from the definition of agency in section 2302. SJA7-8; *see also* Section I.A, above. The FBI also separately argued that the MSPB lacks jurisdiction to review the merits of Mr. O'Boyle's underlying security clearance suspension. SJA4 (relying on *Egan* and its progeny).

The administrative judge scheduled an initial status conference, and "[i]n preparation for the conference," advised Mr. O'Boyle to "review the agency's

Narrative Response which provides an accurate discussion of the controlling legal authority." JA157. During the status conference, the administrative judge "discussed the controlling legal authority relating to an indefinite suspension action based on the suspension of a security clearance." JA160. After the conference, he issued an order and summary of the discussion, where he again summarized the "applicable law," including that "[w]hen an employee files a [b]oard appeal challenging an adverse action based on the suspension or revocation of a security clearance, the [b]oard does not have authority to review the substance of the underlying security determination." JA161, JA163. Other than generally "noting that the agency had provided an accurate discussion of the law in the narrative portion of" its submission, the order did not separately address the alternative argument that FBI employees could not raise a whistleblower retaliation defense in a direct appeal at all. JA160; *see generally* JA160-164.

The administrative judge directed that if "either party objects to the contents, rulings, and/or accuracy of this summary, they must file any exception or objection within five-calendar days of this order." JA161 (emphasis omitted). Mr. O'Boyle did not. He submitted no objection or exception either to suggest that he believed he could raise a whistleblower retaliation defense under section 7701, or that he believed he had constitutional claims that could escape *Egan*'s bar. *See* JA2-3.

19

Indeed, during the prehearing conference "the parties agreed" on a list of "the only material issues to be decided in this appeal, **to the exclusion of all other issues**," and this list did not include any whistleblower-related allegations, constitutional or otherwise. JA189 & n.3 (all emphasis in original); *see* JA195 (the caveat identified by Mr. O'Boyle's counsel as a potential other affirmative defense was an additional harmful procedural error defense, not a whistleblower defense, as discussed under "Other Matters"). Mr. O'Boyle's prehearing written submission similarly confirmed that the first issue—whether the agency can "prove by preponderant evidence that it properly suspended the appellant," JA189—was limited to "(1) [whether] the Appellant's eligibility to occupy a sensitive position was suspended, (2) whether the clearance or eligibility was a requirement of the appellant's position, and (3) whether the agency followed the procedures set forth in 5 U.S.C. § 7513." SJA10. Mr. O'Boyle did not include any whistleblower retaliation claims.

On May 26, 2023, following a hearing, the administrative judge issued his initial decision, affirming the indefinite suspension. JA368-395. Specifically, the administrative judge concluded that "the unrefuted evidence demonstrates that the appellant's Special Agent position required that he maintain a [Top Secret] security clearance as an essential condition of employment," "that the agency suspended his clearance on September 23, 2022," and "that in proposing the indefinite suspension

20

action, the agency complied with the procedural protections afforded by 5 U.S.C. § 7513." JA374-375. The administrative judge further determined that Mr. O'Boyle failed to prove either a due process violation or harmful procedural error. JA376-386. Finally, the administrative judge concluded that the agency demonstrated a nexus between Mr. O'Boyle's suspension and the efficiency of the service, and that the suspension was reasonable. JA386-387.

Mr. O'Boyle did not petition for full board review and accordingly the initial decision became the final decision of the board on June 30, 2023. *See* JA388.[4]

On August 11, 2023, Mr. O'Boyle timely filed a petition for review in this Court, seeking to raise only issues related to a whistleblower retaliation claim. On October 31, 2023, we filed a threshold motion to dismiss. On February 21, 2024, the Court referred our motion to dismiss to the merits panel and directed the parties "to address in their briefs the issues presented in the motion to dismiss." Order (Feb. 21, 2024).

---

[4] The board consists of three Presidentially-appointed and Senate-confirmed members; it can delegate the initial adjudication of a case to an administrative judge who issues an initial decision. 5 U.S.C. §§ 1201; 1204(b); 5 C.F.R. § 1201.111. Parties may seek review of that initial decision by the board, or the board may grant such review *sua sponte*. § 7701(e)(1); 5 C.F.R. § 1201.114. If a petition is filed, there is no final decision until the board either denies the petition or issues a decision that disposes of the entire action. 5 C.F.R. § 1201.113. If no petition is filed, unless *sua sponte* reopened by the board, the initial decision becomes the final decision of the board 35 days after issuance. *Id*. Only final decisions are subject to judicial review in the courts of appeals. § 7703(b)(1).

## SUMMARY OF THE ARGUMENT

Although the CSRA system overall is complex, the application of the outer limits of that system to Mr. O'Boyle's case here is straightforward and simple. Congress established a separate, FBI-specific, set of whistleblower retaliation protections and associated enforcement mechanisms for FBI employees like Mr. O'Boyle in section 2303—a process Mr. O'Boyle undisputedly did not follow in this case. Instead, Mr. O'Boyle seeks to invoke the protections Congress established for *other* Executive agencies, and from which it explicitly *excluded* the FBI. Indeed, Mr. O'Boyle seeks to go another step further and stretch those, already inapplicable to him, protections beyond even their statutory and constitutional limits.

Mr. O'Boyle argues that in the context of his direct appeal under section 7701, the MSPB could and should have considered whether the FBI improperly suspended his security clearance in retaliation for protected whistleblower activity. The MSPB correctly did not do so.

At the outset, this Court lacks jurisdiction over Mr. O'Boyle's petition. Subject to two exceptions, the Court of Appeals for the Federal Circuit has "exclusive jurisdiction" over "an appeal from a final order or final decision of the Merit Systems Protection Board." 28 U.S.C. § 1295(a)(9); § 7703(b)(1). Neither exception applies to Mr. O'Boyle's petition here. There is no dispute that his

22

appeal is not a "case[] of discrimination" subject to review in district court. § 7703(b)(2). And contrary to Mr. O'Boyle's argument, his petition does not fall within the limited grant of parallel jurisdiction to the regional circuits in section 7703(b)(1)(B). That section expressly conditions regional circuit jurisdiction on the enforcement of "prohibited personnel … practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)." But FBI employees, like Mr. O'Boyle, are categorically excluded from these provisions. § 2302(a)(2)(C)(ii)(I). Mr. O'Boyle cannot demonstrate that Congress's specific affirmative invocation of statutory provisions—sections 2302(b)(8) & (b)(9)—that categorically *exclude* the FBI should nonetheless be read to *include* the FBI.

In addition to precluding this Court's jurisdiction, the FBI's exclusion from the whistleblower retaliation protections in section 2302 is also dispositive on the merits. Affirmative defenses for whistleblower retaliation under section 7701 are expressly limited to those protections found in section 2302. § 7701(c)(2)(B); *Parkinson*, 874 F.3d 713-16. Thus, Mr. O'Boyle, as an FBI employee, may not seek MSPB review of a whistleblower retaliation claim in his direct appeal under section 7701. And even the protections of section 2302 do not apply to the suspension of a security clearance. *See* § 2302(a)(2)(A); *Weber*, 209 F.3d at 759-60 (suspension of security clearance not a "personnel action" under section 2302(a)(2)); *Hesse*, 217 F.3d at 1377-80 (same). That is, even if Mr. O'Boyle was

*not* an FBI employee, he still could not seek MSPB review of the agency's decision to suspend a security clearance based on a whistleblower retaliation claim.

Nor may Mr. O'Boyle elide the procedures (and limits) Congress imposed though the expediency of affixing a bare "First Amendment" label to his "whistleblower argument." Br. 33. It is unclear whether Mr. O'Boyle believes that *all* claims of "whistleblower reprisal" constitute "constitutional claim[s]," Br. 33, or whether that is a designation he is attempting to impose only on *his particular* claim. Regardless, the merits of security clearance decisions are constitutionally committed to the discretion of the President (and his designees), and claims of whistleblower retaliation in that context lie beyond the province of the MSPB or the courts. *Egan*, 484 U.S. at 527-32. There are extensive, and comprehensive, procedures for the adjudication of such claims within the intelligence agencies. Mr. O'Boyle cannot sidestep that process by seeking redress elsewhere.

Moreover, Mr. O'Boyle makes each of his arguments in favor of MSPB review of his whistleblower retaliation claim for the first time on appeal, having never objected to the MSPB's understanding and application of existing law to preclude such review below. That procedural failure is alone sufficient to defeat his appeal. "Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not

topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952).

Mr. O'Boyle's petition should be dismissed or denied.

STANDARD OF REVIEW

The Court reviews "[q]uestions of statutory interpretation and constitutional law … *de novo*." *Woodhull Freedom Found. v. United States*, 72 F.4th 1286, 1297 (D.C. Cir. 2023).

ARGUMENT

I.      The Court Lacks Jurisdiction Over Mr. O'Boyle's Petition

Mr. O'Boyle attempts to invoke this Court's jurisdiction "pursuant to the All Circuit Review Act, 5 U.S.C. § 7703(b)(1)(B)." Br. 13.  But section 7703(b)(1)(B) extends jurisdiction for direct appellate review of MSPB decisions to the regional circuit courts of appeals only for a discrete subset of cases:  only those petitions that "challenge [] the [b]oard's disposition of allegations of a prohibited personnel practice … described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)." All other direct appellate review of MSPB decisions remains within the "exclusive jurisdiction" of the Federal Circuit.  § 1295(a)(9); § 7703(b)(1)(A).

This case does not, and cannot, implicate an allegation of a "prohibited personnel practice … described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B),

25

(C), or (D)," and consequently lies beyond the limited grant of jurisdiction to this Court. FBI employees, like Mr. O'Boyle, are categorically excluded from subsections 2302(b)(8) and (b)(9)(A)(i), (B), (C), or (D). These subsections prohibit "tak[ing] or fail[ing] to take, or threaten[ing] to take or fail to take," a "*personnel action*" against any "employee or applicant for employment because of" protected whistleblower disclosures. § 2302(b)(8) & (b)(9). A "personnel action," is defined as a particularized list of employment actions taken "with respect to an employee in, or applicant for, a covered position *in an agency*." § 2302(a)(2). And "an agency" is defined in section 2302 to mean "an Executive agency and the Government Publishing Office, *but does not include* … the Federal Bureau of Investigation[.]" § 2302(a)(2)(C)(ii)(I) (emphasis added to all).

Thus, section 2302 categorically excludes the FBI from the scope of its whistleblower retaliation protections—whistleblower retaliation protections for the FBI are instead governed by its own separate statute, section 2303. *See Parkinson*, 874 F.3d at 713 ("[T]he whistleblower provisions of § 2302 do not apply to all agencies and their employees. The plain language of the statute excludes the FBI.") (citation omitted); *see also Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383, 399 (2015) (observing that "Congress has [exempted] the Federal Bureau of Investigation" "from the requirements of [s]ection 2302(b)(8)(A)"); *Davis v. Billington*, 681 F.3d 377, 385 (D.C. Cir. 2012) (observing that "intelligence

26

agencies" are excluded from "prohibited personnel practices" in section 2302);

*Mead v. Merit Sys. Prot. Bd.*, 687 F.2d 285, 286 (9th Cir. 1982) ("The [b]oard

lacks jurisdiction to consider allegations of improper personnel practices by

excepted agencies like the FBI."). Section 7703(b)(1)(B) does not grant

jurisdiction to the regional circuit courts of appeals based on prohibited personnel

practices in section 2303.

Mr. O'Boyle does not dispute that the FBI is excluded from the

whistleblower retaliation protections in section 2302. Nevertheless, he insists that

despite that exclusion—and despite the specificity of the cross-reference in section

7703(b)(1)(B)—this Court has jurisdiction over petitions based on *any*

whistleblower activity, no matter the source of the protection. *See* Br. 15-17. That

argument defies the plain language, context, and history of the statutory framework.

1.  The plain language of the statute precludes jurisdiction. Mr. O'Boyle

argues that "[t]he words 'practices described in' differ from language like 'brought

under' or 'arising under'" and that this "imprecise language" means that

"§ 7703(b)(1)(B) is unmistakably designed to apply not just to disciplinary actions

against employees covered by § 2302,"—as it explicitly states—"but," *sub silentio*,

"to the closely analogous, identically defined, whistleblower actions covered by

§ 2303." Br. 18-21. Mr. O'Boyle is wrong at every step: the whistleblower

retaliation protections in section 2303 are not identical to those in 2302, the cross-

reference in section 7703(b)(1)(B) is the antithesis of imprecise, and Congress's use of "described in" cannot bear the weight Mr. O'Boyle would place upon it.

Indeed, there is no such thing as an action "brought under" section 2302. Throughout the CSRA Congress consistently used the identical "described in" language it repeated in section 7703(b)(1)(B). In an individual right of action, "an employee … may, with respect to any personnel action taken, or proposed to be taken … as a result of a *prohibited personnel practice described in section 2302(b)(8) or section 2302(b)(9)(A)(i), (B), (C), or (D)*, seek corrective action from" the MSPB. § 1221(a) (emphasis added). So too, when whistleblower retaliation is raised as an affirmative defense in a direct adverse action appeal, "the agency's decision may not be sustained … if the employee … shows that the decision was based on any *prohibited personnel practice described in section 2302(b) …*" § 7701(c)(2)(B) (emphasis added).

Mr. O'Boyle's argument would therefore render Congress's considered—repeated and undisputed—decision to exclude the FBI from the whistleblower protections in section 2302 a nullity. And it would render the separate statutory scheme Congress enacted defining whistleblower protections specifically for the FBI in section 2303 superfluous. The Court should reject such an untenable result. *See Loughrin v. United States*, 573 U.S. 351, 358 (2014) (It is a "cardinal principle of interpretation that courts must give effect, if possible, to every clause and word

of a statute.") (quotation marks omitted).

Mr. O'Boyle's reliance on cases from other circuits in support of his argument, in addition to those cases not being binding on this Court, is misplaced. The Sixth Circuit's analysis of sentencing guidelines—where, unlike the CSRA, the guidelines themselves used both versions of the contrasted language—is inherently inapposite. Br. 19-20. And the Fifth Circuit never considered whether appellate review of MSPB decisions in section 7703(b)(1)(B) covers petitions by FBI agents because Mr. Zummer never went to the MSPB. *Zummer v. Sallet*, 37 F.4th 996, 1004 (5th Cir. 2022). The court's passing shorthand description of a statutory provision that was undisputedly not at issue does not suggest an adoption of Mr. O'Boyle's interpretation. Nor does it constitute "carefully considered language," much less that of the Supreme Court, which, even if technically dictum, would be "accorded substantial weight." *Cf. Wagner v. FEC*, 717 F.3d 1007, 1015 (D.C. Cir. 2013) (alteration omitted, quoting *United States v. Dorcely*, 454 F.3d 366, 375 (D.C. Cir. 2006)); *see* Br. 16-17.

Finally, Mr. O'Boyle's argument that his interpretation is "supported by" the MSPB decision, "which explicitly provided to Petitioner O'Boyle the option to seek review from any court of appeals of competent jurisdiction," Br. 16, ignores what the decision actually said. The notice of appeal rights that he cites presented all of the various appeal options that *might* be possible in the panoply of MSPB

29

cases—including discrimination cases, JA393-394, which this case undisputedly is not—and explicitly warned Mr. O'Boyle that the option to appeal to a regional circuit "applies to you <u>only</u> if you have raised claims … under [] § 2302(b)(8) or … § 2302(b)(9)(A)(i), (B), (C), or (D)," JA394.  The notice, therefore, is consistent with the statute and informed Mr. O'Boyle that the option to seek review in a regional circuit did not apply to him.

2. <u>The statutory context confirms that jurisdiction under section 7703(b)(1)(B) does not extend to the enforcement of FBI whistleblower retaliation protections</u>.  Mr. O'Boyle also argues that the "parallel[s]" between section 2302 and 2303 mean that "[a]n employee covered by the process enumerated in § 2303 still alleges wrongful conduct described in § 2302."  Br. 20.  Not so.  To be sure, section 2303 borrows its list of personnel actions from a subset of section 2302: "action[s] described in clauses (i) through (x) of section 2302(a)(2)(A)." § 2303(a).  But although the employment actions taken by the agency that could be reviewed for retaliation therefore overlap, the scope of protected activity by the employee is different.

In 2012, when Congress first enacted section 7703(b)(1)(B)'s all-circuit review, a disclosure made by an FBI employee was protected only if it was made "to the Attorney General (or an employee designated by the Attorney General for such purpose)."  5 U.S.C. § 2303(a) (2012).  No such limit exists in section

30

2302(b)(8). Although in 2016 Congress expanded the entities to whom FBI employees could make protected disclosures, it remains a finite and closed list. § 2303(a)(1); Pub. L. 114-302, § 2, 130 Stat. 1516. On the other hand, although section 2303 has more limits on to *whom* a protected disclosure can be made, it has fewer restrictions on the *substance* of what can be disclosed. Unlike section 2303, section 2302(b)(8) does not protect disclosures (unless made to a more limited enumerated audience) that are "specifically prohibited by law" or where the information is "specifically required by Executive order to be kept secret in the interest of national defense or the conduct of foreign affairs." § 2302(b)(8)(A). Thus, Mr. O'Boyle's suggestion that the whistleblower protections in sections 2302 and 2303 are "identically defined," Br. 20, is facially incorrect.

And when Congress has set out to expand the scope of protections and enforcement mechanisms afforded to FBI employees, it has done so by amending section 2303. For example, on December 23, 2022, Congress added subsection (d), granting FBI employees for the first time the right to file an individual right of action at the MSPB. Pub. L. 117-263, Div. E, Title LIII, § 5304(a), 136 Stat. 3250-51. That addition would have been unnecessary if, as Mr. O'Boyle claims, "the wrongful conduct" an FBI employee "is subjected to can nonetheless be 'described

31

in' § 2302" despite the FBI's exclusion from that section.  Br. 19.[5]  The existence

of these two separate statutes, a separation that Congress has not only maintained

for over 40 years, but reinforced by adjusting the universe of protections for each

one separately, powerfully confirms that Congress's choice to invoke one, but not

the other, cannot be elided or ignored.

       3.     Legislative history reinforces that jurisdiction under section

7703(b)(1)(B) does not extend to the enforcement of FBI whistleblower retaliation

protections.  Mr. O'Boyle relies heavily on legislative history.  Br. 13-15, 21.

Indeed, tellingly, he begins his analysis with legislative history instead of the text

of the statute itself, an approach the Supreme Court has described as

"inappropriate[]" and "a relic from a bygone era of statutory construction." *Food*

*Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019) (quotation marks

omitted).  The Supreme Court has been clear:  "We cannot replace the actual text

with speculation as to Congress' intent" and legislative history cannot alter

unambiguous statutory text.  *Henson v. Santander Consumer USA Inc.*, 582 U.S.

---

    [5]  The amicus brief filed in support of Mr. O'Boyle's interpretation gets the import of the matching language between sections 7703(b)(1)(B) and 1221 backwards.  If, as Mr. Mainen claims, the language in section 1221 *itself* is read to include an individual right of action by FBI employees, then section 2303(d) serves no function.  *See* Am. Br. 2-8.  Section 2303(d) is necessary to expand the rights of FBI employees to bring such cases to the MSPB precisely because section 1221 by its own terms—like section 7703(b)(1)(B)—excludes the FBI.

79, 89 (2017) (citation omitted); *Food Mktg.*, 139 S. Ct. at 2364. Mr. O'Boyle misapprehends the history regardless.

In the Whistleblower Protection Enhancement Act, alongside the creation of all-circuit review by specific cross-reference to section 2302, Congress also reenacted section 2302's exclusion of the FBI. Pub. L. 112-199, §§ 105, 108, 126 Stat. 1468, 1469. The legislative history confirms that Congress understood that it was making such an exclusion and that it did not intend to eliminate the separation of whistleblower retaliation protections for FBI employees from those of other Executive agencies. *See* H.R. Rep. 112-508, at 7 (explaining that section 105 "[c]larifies the President's flexibility to determine what agencies should be exempted from whistleblower protections. Explicit exceptions include the FBI …"); S. Rep. 112-155, at 35 (explaining that, even Senate Bill 743 that was first reported in the Senate, which included numerous provisions that did not make into the final law, still "[did] not alter the FBI's separate whistleblower protections, nor [did] it alter the current process as articulated by regulation at 28 C.F.R. part 27."). Thus, Mr. O'Boyle is demonstrably incorrect that "[t]here is no indication anywhere in the legislative history of any congressional intent to exclude FBI employees from these provisions." Br. 21. Congress was quite explicit in stating the opposite.

Moreover, both in 2012, when regional circuit jurisdiction was introduced, and in 2017, when the extension was made indefinite, FBI employees could not enforce their whistleblower retaliation protections through the MSPB at all. *Parkinson*, 874 F.3d at 717 ("[T]he [b]oard does not have jurisdiction to review FBI employees' whistleblower reprisal claims."). It was not until December 23, 2022, that Congress permitted FBI employees to seek corrective action for their whistleblower retaliation claims at the MSPB. Pub. L. 117-263, Div. E, Title LIII, § 5304(a), 136 Stat. 3250-51. Thus, even if a congressional report referenced opening "any" MSPB whistleblower retaliation decision to regional circuit review in 2012 and 2017, that would still exclude the FBI—at that time, no MSPB decision addressing FBI claims of whistleblower retaliation could exist.

Ultimately, despite insisting that "[s]ection 7703(b)(1)(B) means what it says," Br. 19, 22, Mr. O'Boyle invites this Court to disregard the actual language Congress used. Section 7703(b)(1)(B) does *not* say that any petition based on "protected whistleblower activity"—from wherever those protections might stem—can be filed in the regional circuits, *contra* Br. 15-16; Congress conditioned regional circuit jurisdiction by specific cross-reference to sections 2302(b)(8) and 2302(b)(9)(A)(i), (B), (C), or (D). And although all allegations of prohibited personnel practices "described in sections 2302(b)(8) or 2302(b)(9)(A)(i), (B), (C), or (D)" will necessarily relate to whistleblower activity, the inverse is—

34

expressly—not true, not all whistleblower retaliation protections are "described in sections 2302(b)(8) or 2302(b)(9)(A)(i), (B), (C), or (D)."  Mr. O'Boyle's whistleblower protections lie in section 2303, not section 2302.  And section 7703(b)(1)(B) does not grant regional circuits jurisdiction based on allegations of prohibited personnel practices in section 2303.

Mr. O'Boyle's petition should be dismissed.[6]

## II. Mr. O'Boyle Cannot Raise A Whistleblower Retaliation Defense To The Suspension Of His Security Clearance

Mr. O'Boyle claims that the MSPB "erred by refusing to consider his claims of reprisal for protected whistleblower disclosures under the Whistleblower Protection Act," and that the Supreme Court's *Egan* decision "does not apply to constitutional arguments, like the First Amendment whistleblower argument" Mr. O'Boyle suggests is "being advanced here."  Br. 2, 33.  Both arguments are wrong on the merits, Section II.B., but in the first instance they are also forfeited, Section II.A.

---

[6] Mr. O'Boyle requests that his petition be transferred to the Federal Circuit if this Court determines that it lacks jurisdiction.  Br. 22-23 n.1 (invoking 28 U.S.C. § 1631).  Section 1631 requires that transfer be "in the interest of justice."  In this case, Mr. O'Boyle forfeited the issues he seeks to raise on appeal and his arguments are meritless.  *See* Section II, below.  Transfer is accordingly unwarranted.  *See Phillips v. Seiter*, 173 F.3d 609, 611 (7th Cir. 1999).

A.    Mr. O'Boyle Failed To Preserve His Arguments Regarding A Whistleblower Retaliation Defense

Although Mr. O'Boyle asserts to this Court—tellingly without any citation to the record—that "Petitioner O'Boyle argued below that *Egan* did not bar his whistleblower retaliation defense," Br. 25, that assertion is incorrect.  Mr. O'Boyle did not file any objections to the administrative judge's recitation of the scope of *Egan*.  He never suggested that the whistleblower argument he wanted to raise was somehow constitutional in nature, or that such a distinction should permit him to escape *Egan*'s bar on review of his underlying security clearance suspension.  Nor did Mr. O'Boyle ever respond to the agency's alternative argument that FBI agents could not raise a whistleblower retaliation defense under section 7701 irrespective of *Egan*.

Indeed, by the prehearing conference, Mr. O'Boyle had abandoned his whistleblower retaliation defense entirely.  The parties explicitly agreed upon "the only material issues to be decided in this appeal, **to the exclusion of all other issues**," which did not include a whistleblower retaliation claim.  JA189 (all emphasis in original).  Not only did Mr. O'Boyle not object to that list—or otherwise attempt to preserve the issues he seeks to appeal now—his counsel "expressly confirmed that [the due process and harmful procedural error claims set out in the list of issues to be decided] are the only affirmative defenses the appellant is raising in this case."  JA189 n.3; *see* JA195 (the "exception" counsel

36

flagged was an additional harmful procedural error claim, not a whistleblower retaliation claim); JA372 & n.7. Like the order setting forth the applicable law after the first status conference, the prehearing order also instructed that if "either party objects to the contents, rulings, and/or accuracy of this summary," it "must file any exception or objection within five-calendar days." JA195, JA161 (emphasis removed). Neither time did Mr. O'Boyle file any objections or raise any argument about a "First Amendment whistleblower argument" exception to *Egan*.

Mr. O'Boyle may not now litigate on appeal objections he never raised or argued to the board. "A party in an MSPB proceeding must raise an issue before the administrative judge if the issue is to be preserved for review in [] court." *Bosley v. MPSB*, 162 F.3d 665, 668 (Fed. Cir. 1998); *see also Marymount Hosp. v. Shalala*, 19 F.3d 658, 663 (D.C. Cir. 1994) ("[A]bsent exceptional circumstances not present here, it is not [this Court's] practice to entertain issues first raised on appeal.") (quotation marks omitted). And the Supreme Court has held that even constitutional issues must first be presented to the board, observing that the "MSPB routinely adjudicates some constitutional claims" and that the "CSRA empowers the MSPB to take evidence and find facts for Federal Circuit review" even if the board cannot adjudicate the constitutional question. *Elgin v. Dep't of the Treasury*, 567 U.S. 1, 5, 12, 19 (2012).

Mr. O'Boyle's arguments in support of preservation instead only confirm

forfeiture or waiver.[7]  First, Mr. O'Boyle argues that because the first issue before the board was whether "the agency prove[d] by preponderant evidence that it *properly* suspended the appellant," his whistleblower retaliation claim was encompassed within the word "properly" in that issue.  Br. 39-40.  That argument is contrary to both law and procedural fact.

Mr. O'Boyle's prehearing submission stated that this first issue addressed only whether the agency could show "that (1) the Appellant's eligibility to occupy a sensitive position was suspended, (2) whether the clearance or eligibility was a requirement of the appellant's position, and (3) whether the agency followed the procedures set forth in 5 U.S.C. § 7513."  SJA10.  Mr. O'Boyle's own submission, therefore, never suggested that he was trying to press a whistleblower retaliation claim under that issue.  And with good reason.

In direct appeals, to the extent it can be raised, whistleblower retaliation is an affirmative defense.  It arises only *after* the agency has proven by preponderant evidence that it "properly" took the adverse action, and shifts the burden of proof

---

[7]  As the Supreme Court has observed, although often used interchangeably, forfeiture and waiver are distinct concepts:  "forfeiture is the failure to make the timely assertion of a right" even if inadvertent, whereas "waiver is the intentional relinquishment or abandonment of a known right."  *United States v. Olano*, 507 U.S. 725, 733 (1993) (quotation marks omitted).  At minimum, Mr. O'Boyle forfeited the arguments he seeks to raise.  His counsel's affirmative statements during the prehearing conference and in his prehearing submission outlining which affirmative defenses Mr. O'Boyle was raising while omitting any mention of a whistleblower defense further suggest waiver.

to the *appellant*. § 7701(c)(2)(B); 5 C.F.R. § 1201.56; *Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1367 (Fed. Cir. 2012) ("Analysis of a whistleblower defense takes place within a burden shifting scheme, wherein the agency must *first* prove its case … by a preponderance of the evidence, *then* the [] employee must prove by a preponderance of the evidence that he … made a protected disclosure under § 2302(b)(8) that was a contributing factor to the [adverse action].") (emphasis added, citation omitted). That is, an issue framed in terms of the *agency's* preponderance of the evidence burden cannot, as a matter of law, encompass a claim of retaliation for a protected disclosure. And Mr. O'Boyle's candid admission—consistent with his representations below, JA189—that he "is not trying to raise some [] independent claim" of whistleblower reprisal, Br. 39, further disposes of any claim of preservation.

His second argument, that the board recited the legal propositions he now wants to challenge, fares no better. Br. 39-41. To be sure, the MSPB "took a position on *Egan*," Br. 40, but it did not and could not have "considered and rejected [Mr.] O'Boyle's affirmative defense that his security clearance was revoked [sic][8] for improper reasons." Br. 41. The board held that it "does not have authority to review the substance of the underlying security determination," JA373,

---

[8] At the time of his MSPB appeal, Mr. O'Boyle's security clearance was suspended for investigation, not revoked. *See* JA150.

and the availability of such an affirmative defense is precisely the issue he now seeks to litigate.

But for purposes of forfeiture or waiver, the question is not whether the MSPB applied existing law in manner that Mr. O'Boyle considers objectionable. That much is true in *every* case in which the question of forfeiture or waiver arises as otherwise an appeal would not exist. The question is whether Mr. O'Boyle articulated the objections he now makes to this Court *to the MSPB*, instead of "stand[ing] idly by, watching the proceedings and allowing the [board] to commit error on which [he] subsequently complains." *Hopkins v. Saunders*, 199 F.3d 968, 975 (8th Cir. 1999) (citation omitted).

In short, it is Mr. O'Boyle's pointed silence—whether a strategic choice or inadvertent omission—in the face of the board's reliance on *Egan* and its progeny in a manner with which he now invites this Court to disagree that is precisely what constitutes the waiver or forfeiture, respectively.[9] "Simple fairness … requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *L. A. Tucker*, 344 U.S. at 37.

---

[9] Mr. O'Boyle also appears to misunderstand the argument he purports to rebut from our motion to dismiss. The question is not whether the *MSPB* understood the *Egan* bar to apply in the "context of an affirmative defense," Br. 40, but whether *Mr. O'Boyle* preserved an argument about an affirmative defense of whistleblower retaliation in the face of *Egan*.

B.   As An FBI Agent Suspended Because Of The Suspension Of His Security Clearance, Mr. O'Boyle Is Twice Precluded From Raising A Whistleblower Retaliation Defense In This Case

Mr. O'Boyle's desire to have the MSPB adjudicate his claim that the FBI suspended his security clearance in retaliation for protected whistleblower disclosures is twice barred:  (1) the statutory framework for FBI employees does not permit Mr. O'Boyle to enforce his whistleblower protections through an affirmative defense in a direct appeal to the MSPB, and (2) the MSPB is not authorized to review security clearance determinations (or require the reinstatement of an employee's security clearance) for any employee.  That is, Mr. O'Boyle is precluded from raising a whistleblower retaliation defense here based both on *why* he was suspended and on *where* he was employed, and either of these bars is independently sufficient to affirm the board's decision.

1.   Congress Channeled Enforcement Of Mr. O'Boyle's Whistleblower Protections Through Internal Review

Even setting aside the *Egan* and security clearance determination issues, Mr. O'Boyle cannot raise a whistleblower retaliation defense in his direct appeal. At the time of his suspension, all enforcement of FBI whistleblower protections was channeled though a separate, parallel review process that lay beyond the purview of the MSPB.  And even if Congress's subsequent expansion of some MSPB rights for FBI employees could be retroactively applicable to Mr. O'Boyle, that expansion did not change the availability of defenses in direct appeals, and

41

Mr. O'Boyle failed to comply with its conditions.

At the outset, Mr. O'Boyle argues that we waived this argument by failing to raise it to the MSPB. Br. 24-26. Even setting aside that jurisdictional arguments can never be waived, *see Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012), Mr. O'Boyle is simply wrong. In the narrative response portion of the agency file submitted at the very beginning of the MSPB case, we explicitly argued that "FBI employees are not able to bring whistleblower claims to the MPSB" because "§ 2302, does not apply to the FBI." SJA7. The narrative response further argued that the expansion of the right to file an individual right of action that Congress introduced after Mr. O'Boyle was suspended was inapplicable to his direct appeal, and that Mr. O'Boyle "cannot raise a whistleblower claim, including any affirmative defense, at the MSPB (or in federal court)." SJA9 & n.3. These arguments were made in addition to, but separate from, the argument that Mr. O'Boyle could not "challenge the underlying reason for [his] security clearance suspension" under *Egan*—even if that challenge was not based on whistleblower retaliation. SJA4.

That is, the agency's position from the beginning—as it remains before this Court—has been that Mr. O'Boyle's purported whistleblower retaliation challenge to the merits of his security clearance is twice barred. And either his exclusion from section 2302 *or* the bar articulated in *Egan* is sufficient. That the administrative

judge ultimately chose to rely on *Egan* rather than section 2302 cannot amount to waiver of our alternative argument made in support of the same conclusion.

On the substance, Mr. O'Boyle argues that the Federal Circuit's *en banc* decision in *Parkinson* "construed a statute that is simply no longer the law" and "did not depend on the text and meaning of § 7701." Br. 26-27. That is false. The Federal Circuit expressly held that "FBI employees are not covered under § 2302(b)(8) and may not bring a claim of whistleblower reprisal … as an affirmative defense under 5 U.S.C. § 7701(c)(2)(B)" and "allowing the [b]oard to review FBI whistleblower reprisal claims under the broad language of § 7701(c)(2)(C) would render the specific provisions of § 7701(c)(2)(B) superfluous." 874 F.3d at 713-14, 716. Those holdings were interpretations of section 7701, and Congress undisputedly and indisputably made no changes to section 7701 thereafter. The *Parkinson* decision on these questions is therefore correct and remains good law. And although it is not, by its own force, binding on this Court, it is binding on Mr. O'Boyle's appeal, because only the Federal Circuit has jurisdiction to hear it. *See* Section I, above.

Mr. O'Boyle attempts to get around the limitations in section 7701 by two means, both wrong. One, he relies on the same argument he makes in support of this Court's jurisdiction, namely that by cross-referencing specifically section 2302(b), Congress meant to, *sub silentio*, open the doors to employees specifically

43

excluded from that provision and instead covered by section 2303, which is not referenced. *See* Br. 28-31. That argument remains an untenable reading of the statutory text. *See also* Section I, above. And Mr. O'Boyle offers no response to the numerous ways that his argument would render superfluous at least section 2302(a)(2)(C)(ii)(I), section 2303, and section 7701(c)(2)(B).

Two, Mr. O'Boyle attempts to rely on the amendment Congress made to section 2303 on December 23, 2022. Br. 28. But nothing about that amendment changes the (non)availability of a whistleblower retaliation defense for Mr. O'Boyle. Indeed, section 2303(d) is inapplicable to, and makes no difference for, Mr. O'Boyle's case, for at least three independently sufficient reasons.

First, there is no dispute that Mr. O'Boyle was suspended and filed his appeal before section 2303(d) was enacted. Mr. O'Boyle appears to simply assume that this provision would nevertheless retroactively apply to him, but the rules on retroactivity dictate the opposite. Legislative action is presumptively *not* retroactive "*unless* Congress has clearly manifested its intent to the contrary." *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 946 (1997) (emphasis added); *see id*. (describing the presumption as "time-honored," "deeply rooted," and supporting a principle that "has timeless and universal appeal"). Mr. O'Boyle has identified no such "clear manifestat[ion] [of congressional] intent" here. The amendment is silent on retroactivity and therefore does not apply

to this case.  *See also Tumblin v. DOJ*, 2023 MSPB Lexis 3913 (M.S.P.B. July 28, 2023) (holding that section 2303(d) is not retroactive).[10]

Even if it was retroactive in its application, Mr. O'Boyle does not meet its terms.  That is, second, there is no dispute that Mr. O'Boyle filed his appeal pursuant to section 7701, *not* section 1221.  But section 2303(d) expressly permits MSPB review specifically "pursuant to section 1221."  Indeed, if anything, this amendment therefore reinforces that the *Parkinson* Court correctly interpreted section 7701 as precluding whistleblower retaliation defenses by FBI agents in direct appeals.  *Contra* Br. 28.  The *Parkinson* decision was issued in 2017 and "Congress is presumed to know the law, particularly recent precedents that are directly applicable to the issue before it." *Hesse*, 217 F.3d at 1380 (citing *Cannon v. Univ. of Chicago*, 441 U.S. 677, 696-99 (1979)).  Yet Congress neither amended section 7701, nor invoked section 7701 in the changes it made to section 2303.

Moreover, third, section 2303(d) requires FBI employees to exhaust their remedies by pursuing a reprisal complaint with the Department of Justice before seeking MSPB review.  Only "[a]n employee of the Federal Bureau of

---

[10]  Mr. Mainen argues that section 2303(d) is a jurisdictional statute that does not speak to the "substantive rights of the parties" such that the presumption against retroactivity does not apply.  Am. Br. 10 (quoting *Hughes Aircraft*, 520 U.S. at 951).  That argument is implausible on its face:  section 2303 granted FBI employees, for the first time, the substantive right to seek MSPB review of their whistleblower claims.

Investigation *who makes an allegation of a reprisal under regulations promulgated under this section*" may seek MSPB review, either by appealing a "final determination or corrective action order by the Bureau under those regulations" or "[i]f no final determination or corrective action order has been made or issued" within 180 days.  § 2303(d) (emphasis added).  Mr. O'Boyle did not comply with these conditions, and indeed, never even suggests that he did so.

Finally, Mr. O'Boyle attempts to invoke the veterans canon.  Br. 32.  That canon is inapplicable here.  Title 5 is not a veterans benefits statute, it is applicable to both veteran and non-veteran federal employees alike, and the provisions at issue here are not ambiguous.  *See also Rudisill v. McDonough*, 144 S. Ct. 945, 959-61, 967 (2024) (Kavanaugh, J., concurring; Thomas, J., dissenting).

2.    The Merits Of Mr. O'Boyle's Security Clearance Suspension Are Nonjusticiable Under *Egan*

If the Court agrees with any of our arguments up to this point, it need not reach the *Egan* question at all.  Alternatively, that Mr. O'Boyle wishes the MSPB to adjudicate an allegation of retaliation specifically with respect to the suspension of his security clearance is itself an independently sufficient basis to deny his appeal. "[T]he grant of security clearance to a particular employee, a sensitive and inherently discretionary judgment call, is committed by law to the appropriate agency of the Executive Branch," and is not subject to MSPB review.  *Egan*, 484 U.S. at 527.

Mr. O'Boyle suggests that whistleblower retaliation claims—with their

historical underpinnings in the First Amendment—must be an exception to the *Egan* bar. Not so. Both this Court and the Federal Circuit have held that security clearance determinations are not "personnel actions" covered by the whistleblower protections in the CSRA. *Hesse*, 217 F.3d at 1377-80; *Weber*, 209 F.3d at 759-60. Moreover, the Constitution commits security clearance determinations to the President as the Commander in Chief, and there are no judicially discoverable or manageable standards for determining whether an agency has correctly determined that granting an individual access to classified information would be consistent with the interests of national security. *Egan*, 484 U.S. at 527-29; *see Baker v. Carr*, 369 U.S. 186, 217 (1962). Accordingly, either from a statutory or constitutional perspective, Mr. O'Boyle's whistleblower retaliation claim is nonjusticiable.

Mr. O'Boyle claims that "*Egan* must be read in light of *Webster* [*v. Doe*, 486 U.S. 592, 603 (1988)], which," he posits, "held that constitutional claims in the security-clearance context are *not* necessarily barred from judicial review." Br. 34. But this case does not require the Court to resolve the interaction between the outer limits of *Egan* and *Webster* because, as Mr. O'Boyle himself admits, "[u]nder *Egan* and *Webster* [] a security clearance cannot be challenged on the 'substance,' *i.e.*, the interests of national security.'" Br. 34; *see* Br. 10 ("*Egan*'s [] holding was that the [b]oard cannot review the 'substance' of an underlying [security clearance] decision."); Br. 33 (same). That admission is fatal and disposes of this appeal,

47

because reviewing the substance of the FBI's determination to suspend his security clearance is exactly what he is asking this Court to order the board to do.

To determine whether the suspension of Mr. O'Boyle's security clearance was a pretextual "act of retaliation against a whistleblower," as he claims, Br. 35, or based on legitimate "concern about [his] judgment, trustworthiness, and reliability to safeguard classified and sensitive information," as the Security Division found, JA150, the board would have no choice to but to delve into the FBI's national security concerns. Whistleblower retaliation claims, whether under the CSRA, or pre-CSRA, under the First Amendment, require the employee to first prove that "a disclosure or protected activity … was a [] factor in the personnel action," and then the burden shifts to the agency to demonstrate "that it would have taken the same personnel action in the absence of such disclosure." § 1221(e); *see Mt. Healthy*, 429 U.S. at 287.[11] Each of these steps would necessarily require the

---

[11] As part of its comprehensive scheme, the CSRA codified a modified version of the *Mt. Healthy* First Amendment retaliation test in its whistleblower protections, thereby preempting a stand-alone constitutional claim. *See Brown v. GSA*, 425 U.S. 820, 833 (1976). The statute lowered the burden on the employee to demonstrate that retaliation was only a "contributing factor" instead of a "substantial factor" in the action and raised the burden on the agency to show it would have taken the same action by "clear and convincing evidence" instead of "preponderance of the evidence." *See* 135 Cong. Rec. S2779 (Joint Explanatory Statement, 7. burden of proof). The CSRA also provided its own definition of what constitutes a protected disclosure. *See* § 2302(b)(8) (Executive agencies generally); § 2303(a) (FBI specifically). But the overall structure of the burden shifting framework—and critically the kind of examination of the agency's reasons it involves—is the same.

board to pass judgment on the FBI's discretionary "[p]redictive judgment." *Egan*, 484 U.S. at 529.

As the Third Circuit explained (in the context of a direct First Amendment retaliation challenge), "[t]here is simply no way to prove or disprove what was—or perhaps more importantly for this case, what was not—a 'substantial or motivating factor' in the decision to revoke [appellant's] clearance without demanding *some* explanation of that decision from the [agency]." *El-Ganayni v. United States DOE*, 591 F.3d 176, 184 (3d Cir. 2010). And "even if the [agency] *chose* to offer a non-discriminatory explanation for its decision to revoke [appellant's] clearance, a factfinder would then have to assess the plausibility of that explanation to decide whether the government met its 'burden' under step three." *Id*. at 185.

Indeed, even assuming Mr. O'Boyle made disclosures that would otherwise meet some definition of protected,[12] among the allegations that led to the suspension of his security clearance in this case are ones that do no implicate any speech concerns at all, such as his—admitted—actions in using the FBI information technology to access information about a case to which he was never

---

[12] Mr. O'Boyle's casual and haphazard approach to what is actually a carefully structured statutory regime leaves it entirely unclear whether he believes section 2302, section 2303, or the Supreme Court's pre-CSRA First Amendment case law would be the source of that definition. Of course, to the extent that Mr. O'Boyle would wish to rely on the CSRA's expanded protections relative to the First Amendment case law, that would render his claim statutory and not constitutional, thereby defeating the very distinction on which he attempts to rely.

assigned and that was being investigated by a different FBI field office.  JA291-293; *see* JA150 ("The suspension of your security clearance is based on security concerns related to Adjudicative Guideline K – Handling Protected Information, and Guideline M – Use of Information Technology.").

Guidelines K and M include considerations such as "inappropriate efforts to obtain or view protected information outside one's need to know" and "unauthorized use of any information technology system."  National Security Adjudicative Guidelines, at 21, 23.  Parsing out the effect of these (admitted) allegations against any (disputed) purportedly protected disclosures, or otherwise "[w]eighing the strength of the government's arguments against [Mr. O'Boyle's] claims of pretext would amount to a judgment on the merits of the decision to [suspend his] clearance." *El-Ganayni*, 591 F.3d at 185.  That is exactly what Mr. O'Boyle admits "[u]nder *Egan* and *Webster*" is forbidden.  Br. 34.

Mr. O'Boyle's citation to cases, none directly involving the MSPB, for the proposition that some constitutional claims, if they are colorable and do not require the court to assess whether the agency should trust a particular individual to protect classified information, may be justiciable are, therefore, fundamentally beside the point.  *See* Br. 35-37.  Mr. O'Boyle has identified no case—and we are aware of none—where the MSPB or a court second-guessed the agency's judgment as to whether access to classified information by a particular individual would be

"clearly consistent" with the interests of the national security, *see* Exec. Order No. 12968, as Mr. O'Boyle would ask this Court to order the board do here.

Whatever the trappings in which Mr. O'Boyle tries to drape his request, it boils down to a simple truth: he wants the MSPB to order the FBI to not suspend him, which—given the board's unappealed findings—he cannot have unless the MSPB orders the FBI to not suspend his security clearance notwithstanding the Security Division's concerns. But it is the President who is authorized by the Constitution to protect national security and classified information. And it is, in this case, the FBI, not the MSPB, that has been entrusted by the President with carrying out that responsibility. As the Supreme Court "has acknowledged … 'there is a reasonable basis for the view that an agency head who must bear the responsibility for the protection of classified information committed to his custody should have the final say in deciding whether to repose his trust in an employee who has access to such information.'" *Egan*, 484 U.S. at 529.

Mr. O'Boyle is not without recourse. The security clearance process mandates protections for whistleblowers, and there are procedures within the intelligence community by which Mr. O'Boyle may raise his concerns. *See, e.g.*, § 3341(j); Presidential Policy Directive/PPD-19; Security Executive Agent Directive 9. But it is within that framework—not via "outside nonexpert bod[ies]" —that, if his allegations have merit, his relief must lie. *Egan*, 484 U.S. at 529.

<u>CONCLUSION</u>

For the foregoing reasons, the appeal should be dismissed, or, alternatively

the decision of the MSPB should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Elizabeth M. Hosford
ELIZABETH M. HOSFORD
Assistant Director

/s/ Galina I. Fomenkova
GALINA I. FOMENKOVA
Trial Attorney
United States Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480 | Ben Franklin Station
Washington, DC 20044
(202) 514-5495
galina.fomenkova@usdoj.gov

OF COUNSEL:

CHAD TANG
Assistant General Counsel
Federal Bureau of Investigation

May 17, 2024

*Attorneys for the Respondent*

CERTIFICATE OF COMPLIANCE
PURSUANT TO FED. R. APP. P. 32(g)(1)

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B). The brief contains 12,093 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1).

The brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

May 17, 2024                          /s/ Galina I. Fomenkova
                                        GALINA I. FOMENKOVA

                                        *Attorney for the Respondent*